MICHAEL J. NADER, SBN 200425
michael.nader@ogletree.com
RABIA Z. REED SBN 317288
rabia.reed@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
500 Capitol Mall, Suite 2500
Sacramento, CA 95814
Telephone:   916.840.3150
Facsimile:   916.840.3159

Attorneys for Defendant
JO-ANN STORES, LLC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY RAY MCCOY, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JO-ANN STORES, LLC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  4:20-cv-4566<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>*[concurrently filed with civil cover sheet; certification of interested parties; and declaration of Jill Ingram]*<br><br>Action Filed:   May 11, 2020<br>FAC Filed:      June 9, 2020<br>Trial Date:       None |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendant JO-ANN STORES, LLC. ("Defendant" or "JAS") removes this action from the Superior Court of the State of California for the County of Alameda, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA").

## I.   PROCEDURAL BACKGROUND

1. On or about May 11, 2020, Plaintiff BOBBY RAY MCCOY("Plaintiff") filed his Class Action Complaint for Damages ("Complaint") in the Superior Court of the State of California, County of Alameda, entitled *Bobby Ray McCoy v. Jo-Ann Stores, LLC.*, which was assigned case number RG20061158 (the "State Court Action"). A true and correct copy of the

1

Complaint is attached as **Exhibit A** to this Notice of Removal. The Complaint alleges seven causes of action: (1) Failure to Pay Lawful Wages Owed (Labor Code §§ 510, 1194); (2) Failure to Provide Lawful Meal Periods or Compensation in Lieu Thereof (Labor Code §§226.7, 512 and IWC Wage Orders); (3) Failure to Provide Lawful Rest Periods or Compensation in Lieu Thereof (Labor Code §§226.7 and IWC Wage Orders); (4) Failure to Timely Pay Wages (Labor Code §§201-203, 227.3); (5) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Labor Code §226); (6) Failure to Indemnify Employees (Labor Code §2802); and (7) Violations of Unfair Competition Law (Business and Professions Code §§17200-17208). A true and correct copy of the Civil Case Cover Sheet filed by Plaintiff is attached hereto as **Exhibit B**.

2. On June 9, 2020, Plaintiff served Defendant with a copy of the Complaint, as well as other documents filed in the State Court Action. A true and correct copy of the Summons is attached hereto as **Exhibit C** and a true and correct copy of the Proof of Service of Summons is attached hereto as **Exhibit D.**

3. On June 9, 2020, Plaintiff filed a First Amended Complaint ("FAC") for this matter. On June 12, 2020 Plaintiff served the FAC upon Defendant. A true and correct copy of the FAC is attached as **Exhibit E** to this Notice of Removal. The FAC alleges eight causes of action: (1) Failure to Pay Lawful Wages Owed (Labor Code §§ 510, 1194); (2) Failure to Provide Lawful Meal Periods or Compensation in Lieu Thereof (Labor Code §§226.7, 512 and IWC Wage Orders); (3) Failure to Provide Lawful Rest Periods or Compensation in Lieu Thereof (Labor Code §§226.7 and IWC Wage Orders); (4) Failure to Timely Pay Wages (Labor Code §§201-203, 227.3); (5) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Labor Code §226); (6) Failure to Indemnify Employees (Labor Code §2802); (7) Violations of Unfair Competition Law (Business and Professions Code §§17200-17208); and (8) the Private Attorneys General Act ("PAGA") (Labor Code §§2699 *et seq*.).

4. On July 8, 2020, Defendant filed its Answer to Plaintiff's FAC for Damages. A true and correct copy of the answer is attached hereto as **Exhibit F**.

////

5. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the First Amended Complaint and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

## II.   TIMELINESS OF REMOVAL

6. A defendant in a civil action has thirty (30) days from the date it is served with a summons and complaint in which to remove the action to federal court. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). As Defendant's registered agent for service of process were served with the summons and Plaintiff's original Complaint on June 9, 2020, this Notice of Removal is timely. 28 U.S.C. § 1446(b), *see* Fed. R. Civ. P. 6(a)(1)(C); *Fleming v. United Teacher Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 661 (S.D. W.Va. 2003) (removal petition was timely where 30th day after service fell on Thanksgiving and removal petition was filed the following day); *Johnson v. Harper*, 66 F.R.D. 103, 104-105 (E.D. Tenn. 1975) (removal was timely where 30th day after service fell on a Saturday and removal was filed the following Monday).

## III.   JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

7. This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).[1]

### A.   The Size of the Putative Class Exceeds 100 Members

8. In his Complaint and FAC, Plaintiff defines the proposed class as follows: "All persons who are employed or have been employed by Defendants in the state of California and who are/were not classified as "Exempt" or primarily employed in executive, professional, or

---

[1] Defendant is the only named defendant in this matter and, thus, there are no other defendants to consent to removal. Furthermore, an action may be removed by a single defendant under CAFA without the consent of the other defendants. *See* 28 U.S.C. § 1453(a).

administrative capacities and who occupied positions of 'keyholder', 'assistant manager' or similar positions within four (4) years prior to the date this lawsuit is filed… until resolution of this lawsuit." Ex. A, F ¶ 21.

9. Defendant's employment records show that there are over 9,000 current and former employees of Defendant. (Declaration of Jill Ingram ("Ingram Decl."), ¶ 4.)

10. Accordingly, the CAFA numerosity requirement is fulfilled because there are more than 100 class members implicated in Plaintiff's Complaint and FAC. 28 U.S.C. § 1332(d).

### B. The Diversity of Citizenship Requirement is Satisfied

11. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the Court need only find that there is diversity between one putative class member and one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

12. <u>Citizenship of Defendant</u>. For diversity purposes, a limited liability company is a citizen of every state of which its members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."). Defendant JAS, an Ohio Limited Liability Company only has one member, Needle Holdings LLC, which was formed under the laws of the state of Delaware. In turn, Needle Holdings LLC only has one member, Jo-Ann Stores Holdings Inc., which was incorporated under the laws of the state of Delaware and does not have a principal place of business as a mere holding company. (Ingram Decl. ¶ 3.) Accordingly, JAS is a citizen of Delaware for purposes of diversity jurisdiction. (*Id.*).

13. <u>Citizenship of Plaintiff</u>. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). The Complaint and FAC alleges that "Plaintiff is, and at all times mentioned in this complaint was, a resident of California." Ex. A, F at ¶ 6. Likewise, Defendant's employment records confirm that

////

throughout his employment with Defendant, Plaintiff has provided a California home address. Thus, Plaintiff is a citizen of the State of California.

14. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff were somehow a citizen of Illinois or Delaware (and there is no evidence that she is), there is no possible way that the hundreds of putative class members, all of whom worked in California (Ex. A, F, ¶ 13), were also citizens of Illinois or Delaware.

15. Accordingly, the minimal diversity requirement of 28 U.S.C. 1332(d) is met in this action because Defendant is a citizen of Delaware and Illinois while Plaintiff, a putative class member, is a citizen of California.

**C.      The Amount in Controversy Exceeds an Aggregate of $5,000,000**

16. Plaintiff has not alleged a specific amount in controversy in the Complaint and FAC. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV.S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

17. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will

return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

18.  Moreover, there is no antiremoval presumption for cases invoking the CAFA. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). Three principles must apply to CAFA removals. First, a removing defendant's notice of removal "need not contain evidentiary submissions" but only plausible allegations of the jurisdictional elements. *Id*. (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)). "Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions. *Id*. "Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias,* 936 F.3d at 922. In assessing the amount in controversy, a removing defendant is permitted to rely on "a chain of reasoning that includes assumptions." *Id*. at 925. An assumption may be reasonable if it is founded on the allegations of the complaint. *Id*. Assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Id*. at 927 (quoting *Ibarra*, 775 F.3d at 1199). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Id*. at 927 (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). "In that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Id.* at 927 (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them")).

19.  Defendant denies the validity of Plaintiff's claims and requests for relief, and does not concede in any way that the allegations in the Complaint and FAC are accurate, or that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief. For the purposes of this removal, the allegations in the

Complaint and FAC show that it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

20. In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged: (1) unpaid overtime wages; (2) unpaid meal and rest break premiums; (3) failure to timely pay all wages owed upon termination; and (4) the alleged failure to provide accurate wage statements. Because the amounts in controversy for these claims alone exceed the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's other allegations in the Complaint and FAC.

### 1. The Amount Placed in Controversy by the Overtime Claim Exceeds $704,480.00

21. In his First Cause of Action, Plaintiff alleges that Defendant maintained "policies, practices and work shift requirements [which] resulted in Non-Exempt Employees working 'off the clock' and not receiving compensation for all earned wages including overtime in violation of California state and wage hour laws." Ex. A, F, ¶ 33. Plaintiff further alleges that "Class Members were consistently underpaid and were required to work off the clock and without pay." Ex. F ¶ 12.

22. Plaintiff also alleges that the failure to pay overtime constitutes unfair competition within the meaning of the UCL. Ex. A, F, ¶ 62. The statute of limitations for claims under the UCL is four years. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation). Accordingly, the measure of potential damages for the unpaid overtime claim is based on a four year limitations period.

23. Based on Defendant's records, the minimum number of putative class members is 9,000 and they worked a minimum of 190,400 work shifts. (Ingram Decl., ¶ 4.) The average hourly rate of the putative class members was $12.35. *Id.*

24. Defendant's calculation of the amount in controversy is based on the reasonable assumption, drawn from the allegations in the Complaint that class members were "consistently underpaid", of one hour of overtime for every workweek, or in other words, one total hour of overtime accumulated over a period of 5 shifts worked. The calculation is as follows: Plaintiff's claim for unpaid overtime wages at a rate of time and a half is **$18.50** ($18.50 (1.5 x $12.35) x 1 hour per every 5 shifts worked x **38,080** (20% of 190,400) = **$704,480.00**. The computation of the amount in controversy is based on the data showing that the over 9,000 putative class members worked at least 190,400 shifts between April 3, 2016 and the present, and earned an average hourly rate of $12.35.

25. An estimate of one hour of unpaid overtime for every week of work has been accepted by the federal courts as a reasonable and conservative figure. *See Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N.D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011). This is especially the case where, as here, the plaintiff fails to provide specific allegations concerning the frequency of which he worked overtime without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

### 2. The Amount Placed in Controversy by Plaintiff's Meal and Rest Break Claims Exceeds $940,576.00

26. In his Second Cause of Action, Plaintiff alleges "By their failure to provide thirty (30) minute uninterrupted meal periods by the end of the fifth hour for days on which Non-Exempt Employees work(ed) work periods in excess of five (5) hours and failing to provide compensation such statutorily non-compliant meal periods..." Ex. A, F, ¶ 39." Plaintiff also alleges that he and putative class members "frequently" carried radios with them on meal and rest breaks, and that "at least several times a month" work requirements resulted in interrupted or missed meal breaks. Ex. F, ¶ 13.

////

27.     In his Third Cause of Action, Plaintiff alleges "By their failure to authorize and permit a minimum ten (10) minute rest period for every four (4) hours or major fraction thereof per day by Non-Exempt Employees, and failing to provide compensation for such non-provided rest periods…." Ex. A, F, ¶ 43.  Plaintiff also alleges that he "was frequently required to work without the ability to take a 10 minute rest period for every four hours or major fraction thereof worked." Ex. F, ¶ 15.

28.     Under California law, employees who miss meal and rest periods are entitled to one hour of premium pay for each day that a meal or a rest period is missed. *See Marlo v. United Parcel Serv., Inc.*, No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009).  Meal and rest period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, No. C 08-01184 SI, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).  Plaintiff also alleges that the failure to pay meal and rest break premiums constitutes unfair competition within the meaning of the UCL (Ex. A, F, ¶ 62) and therefore applicable statute of limitations for the meal and rest break claims is four years.  Bus. & Prof. Code § 17208.

29.     Plaintiff's allegations are that "at least several times a month" the work requirements prevented putative class members from taking compliant meal breaks, and "frequently" prevented putative class members from taking compliant rest breaks.  Based on these allegations, a reasonable assumption of an alleged violation rate is one meal break violation, and one rest break violation, per week, or in other words, for every 5 shifts worked.  Defendant's calculation of the amount in controversy for Plaintiff's meal and rest break claims is thus **$940,576.00** ($12.35 rest period penalty + $12.35 meal period penalty) x **38,080** (20% of 190,400 shifts)).  The computation of the amount in controversy is based on the data showing that the 9,000 putative class members worked at least 190,400 shifts between April 3, 2016 and the present, and earned an average hourly rate of $12.35. (Ingram Decl., ¶ 4.)

////

////

////

### 3. The Amount Placed in Controversy by Plaintiff's Waiting Time Penalty Claim Exceeds $4,149,600.00

30. In his Fourth Cause of Action, Plaintiff alleges that Defendant has a "More than 30 days have passed since Plaintiff and Class Members have left Defendants' employer, and on information and belief have not received payment pursuant to Labor Code §203." Ex. A, F, ¶ 49. Plaintiff alleges that, as a result, "As a consequence Defendants' willful conduct in not paying all earned wages, certain Class Members are entitled to 30 days' wages as a penalty under Labor Code section 203 for failure to pay legal wages." *Id.* Plaintiff also alleges that penalties are due based on Defendant's alleged failure to pau all wages earned, "including compensation for non provided rest and meal periods, …" Ex. F, ¶48. Because Plaintiff also alleged that putative class members are "consistently underpaid" (¶12), and are "frequently" required to keep their radios on during their meal breaks, which results in being prevented from taking compliant meal breaks "at least several times a month" (¶ 13), and are "frequently" prevented form taking compliant rest breaks (¶ 15), it is reasonable to assume, based on the allegations in the First Amended Complaint, that Plaintiff has placed an amount on controversy equal to the amount of maximum 203 penalties that would apply to every former employee in the putative class.

31. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id.* at 493.

32. Based on Defendant's records, the number of putative class members who were terminated in the three years is more than 1,400 and their average rate of pay was $12.35 per hour. (Ingram Decl., ¶ 5.)

33. Defendant's calculation of the amount in controversy for Plaintiff's waiting time penalty claim is **$4,149,600.00** (1,400 class members x $12.35 average hourly rate x 8 hours per

day x 30 days). The computation of the amount in controversy is based on conservative estimate that each one of the 1,400 terminated class members was owed but not paid at least some of their wages at termination, and accrued 30 days of waiting time penalties based on those unpaid wages. This is a reasonable assumption because Plaintiff's section 203 claim is not premised only on the theory that Defendant failed to timely deliver final paychecks to terminated employees. In light of the fact that, through his Complaint and FAC, Plaintiff is also seeking to recover alleged unpaid minimum wage and overtime wages allegedly owed, it is clear that Plaintiff's theory is that such alleged unpaid wages still have not been paid to Plaintiff and putative class members. It is therefore reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate. *See Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM DAD, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

### 4. Summary of the Amount Placed In Controversy

34. As described above, based on Plaintiff's allegations, and the actual data on the size of the putative class and the number of shifts worked, Plaintiff has placed more than $5,000,000 in controversy. This excludes additional claims asserted by Plaintiff in the Complaint and FAC and potential attorneys' fees, both of which would add to the amount in controversy in support of removal of the matter under CAFA if necessary. *See Fritsch v. Swift Transp. Co. of Arizona, LLC,* 899 F.3d 785, 788 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under contract

or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy."). Again, just last year, the Ninth Circuit emphasized that when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees *must* be included in the assessment of the amount in controversy. *Arias,* 920 F.3d at 922.

| Claim | Amount in Controversy |
|---|---|
| Unpaid Overtime | **$704,480.00** |
| Meal Break Claim | **$470,288.00** |
| Rest Break Claim | **$470,288.00** |
| Waiting Time Penalty Claim | **$4,149,600.00** |
| **Total** | **$5,794,656.00** |

35. Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d). In the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

### IV.   THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1146 ARE SATISFIED

36. In accordance with 28 U.S.C. §1446(a), this Notice of Removal is filed in the District in which the action is pending. The Alameda County Superior Court is located within the Northern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

37. In accordance with 28 U.S.C. §1446(a), copies of all process, pleadings, and orders served upon Defendants are attached as Exhibits to this Notice.

38. In accordance with 28 U.S.C. §1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Alameda. Notice of compliance shall be filed promptly afterwards with this Court.

39. As required by Federal Rule of Civil Procedure 7.1 and Local Rule 3-15, Defendant concurrently filed its Certificate of Interested Parties.

WHEREFORE, Defendants remove the above-captioned action to the United States District Court for the Northern District of California.

DATED:  July 9, 2020

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: _____
Michael J. Nader
Rabia Z. Reed

Attorneys for Defendant
JO-ANN STORES, LLC.

42580860.2